IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEDRIC LYNN STRUGGS,<br><br>        Plaintiff,<br><br>   v.<br><br>G. PONDER, et al.,<br><br>        Defendants.<br>_____/ | No. C 11-2191 YGR (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTIONS AS MOOT**<br><br>(Docket Nos. 66 and 81) |

**INTRODUCTION**

Plaintiff, an inmate at Salinas Valley State Prison ("SVSP"), filed this *pro se* civil rights action under 42 U.S.C. § 1983 asserting constitutional claims against SVSP correctional staff. In a Second Order of Service filed on June 4, 2013, the Court found that Plaintiff stated the following cognizable claims in his first amended complaint ("FAC"): (1) an Eighth Amendment claim for the use of excessive force against Lieutenant J. Stevenson, Sergeant M. Nilsson, and Correctional Officers E. Camarena, O. Reynoso, R. Reynoso, T. Sheets, T. Woolf and J. Rodriguez for pepper spraying Plaintiff on June 11, 2006 and forcibly removing Plaintiff from his cell; (2) an Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs against Lt. Stevenson, Sgt. Nilsson, and Officers Camarena, R. Reynoso, Rodriguez and Woolf for placing Plaintiff in a holding cell after he was pepper sprayed without proper decontamination or medical attention; (3) a retaliation claim against Sgt. Nilsson for ordering the June 11, 2006 search of Plaintiff's cell with the use of excessive force; and (4) a retaliation claim against Captain G. Ponder for holding Plaintiff in administrative segregation following the June 11, 2006 cell-search incident. *See* Doc. No. 46 at 6. In the same Order, the

Court dismissed with prejudice all claims in the FAC arising from Plaintiff's December 2, 2006 disciplinary hearing. *Id.* at 7. Therefore, the claims in the FAC against Officer R. Basso and Lt. E. Moore arising from the disciplinary hearing are dismissed with prejudice.

Defendants[1] move for summary judgment on Plaintiff's four claims and have served Plaintiff with the warning about summary judgment motions required by *Rand v. Rowland*, 154 F.3d 952,953-954 (9th Cir. 1998) (en banc). Plaintiff filed an opposition and Defendants filed a reply. For the reasons discussed below, the motion for summary judgment is GRANTED. Plaintiff has also filed a motion for appointment of counsel and return of property which he was temporarily without from August 3 to August 27, 2012 due to a housing change. Plaintiff's motion is DENIED as moot.

**STATEMENT**

**I.  DEFENDANTS' VERSION OF EVENTS**

The following is Defendants' version of the events relevant to the four cognizable claims:

On June 11, 2006, Sgt. Nilsson worked in the C Facility Housing unit at SVSP. Nilsson Dec. at ¶ 3. He received a confiscated note early that morning that led him to believe that there were controlled substances in Plaintiff's cell. *Id.* at ¶ 5. Plaintiff was housed in cell C7-108 with inmate Manuel Shotwell.[2] *Id.* at ¶ 4.

At approximately 9:08 a.m., Sgt. Nilsson instructed Officers Woolf and Rodriguez to perform a search of Plaintiff's cell to determine if Plaintiff or inmate Shotwell possessed controlled substances. *Id.* at ¶¶ 4, 5, 27; Woolf Dec. at ¶ 4; Rodriguez Dec. at ¶ 4. After receiving Sgt. Nilsson's order, Officers Woolf and Rodriguez approached Plaintiff's cell with Sgt. Nilsson. Nilsson Dec. at ¶ 6; Woolf Dec. at ¶ 5; Rodriguez Dec. at ¶ 5. Officer Woolf ordered Plaintiff and inmate Shotwell to come to the cell door to "cuff up." Nilsson Dec. at ¶ 6;

---

[1] Defendant Officer O. Reynoso joins in Defendants' motion. *See* Doc. No. 111.

[2] Plaintiff refers to inmate Shotwell as his brother. The record does not indicate how or if Plaintiff and inmate Shotwell are related to each other.

2

Woolf Dec. at ¶ 5; Rodriguez Dec. at ¶ 5. The inmates did not comply. Woolf Dec. at ¶¶ 7-11; Rodriguez Dec. at ¶¶ 6-10. Officers Woolf and Rodriguez observed Plaintiff grab an unknown substance from the lower shelf and attempt to flush it down the toilet. Woolf Dec. at ¶ 7; Rodriguez Dec. at ¶ 6. Officer Woolf also observed Plaintiff grab a bag of inmate-manufactured alcohol, known as pruno, and attempt to flush it down the toilet. Woolf Dec. at ¶ 8. In the process of flushing the pruno down the toilet, much of it spilled on the floor and poured out into the hallway. Nilsson Dec. at ¶ 8.

    To preserve the evidence that Plaintiff was attempting to destroy, Officer Woolf sprayed Plaintiff in the face and upper-torso area with one can of pepper spray. Woolf Dec. at ¶ 9; Rodriguez Dec. at ¶ 8. Officer Woolf then repeated his verbal orders for the inmates to "cuff up," but they still did not comply with this order. Woolf Dec. at ¶ 10; Rodriguez Dec. at ¶¶ 10-14. Officers Woolf and Rodriguez observed inmate Shotwell jump off the top bunk, grab an unknown substance off the top shelf, and step towards the toilet. Woolf Dec. at ¶ 11; Rodriguez Dec. at ¶ 11. Officer Woolf again ordered inmate Shotwell to "cuff up," but again he did not comply. Woolf Dec. at ¶ 12; Rodriguez Dec. at ¶ 12. Officer Woolf then sprayed inmate Shotwell in the facial and upper-torso area with a second can of pepper spray to stop him from destroying potential evidence. Woolf Dec. at ¶ 13; Rodriguez Dec. at ¶ 13.

    When Plaintiff and inmate Shotwell failed to comply with Officer Woolf's continued orders to "cuff up," Officer Woolf sprayed both inmates in the facial and upper torso area with a third can of pepper spray. Woolf Dec. at ¶ 15; Rodriguez Dec. at ¶ 15. The inmates then complied and "cuffed up." Woolf Dec. at ¶¶ 16, 17; Rodriguez Dec. at ¶¶ 16, 17. After the inmates were handcuffed, Sgt. Nilsson ordered Officer O. Reynoso, who was in the control booth, to open the cell door and the inmates exited the cell. Woolf Dec. at ¶ 18; Rodriguez Dec. at ¶ 18; O. Reynoso Dec. at ¶ 9; Nilsson Dec. at ¶ 11. The entire incident lasted approximately one minute. O. Reynoso Dec. at ¶ 8.

    Sgt. Nilsson ordered that both inmates be taken to the C Unit Health Services Annex for decontamination and a medical evaluation. Nilsson Dec. at ¶¶ 12, 25; Rodriguez Dec. at ¶ 18.

3

Officers Rodriguez and Camarena escorted Plaintiff and Officers Woolf and Reynoso escorted inmate Shotwell to C Unit. Woolf Dec. at ¶¶ 19-20; Rodriguez Dec. at ¶ 18, Nilsson Dec. at ¶ 13; Camarena Dec. at ¶ 6. Sgt. Nilsson ensured that medical staff were notified that Plaintiff and inmate Shotwell had been exposed to pepper spray and would need medical treatment and evaluation. Nilsson Dec. at ¶ 25. After notifying medical staff that an inmate requires medical attention due to pepper spray exposure, the response taken by medical staff, including the timing of the medical response, was not within the control of the officers. Nilsson Dec. at ¶ 26; Camarena Dec. at ¶ 12; Rodriguez Dec. at ¶ 26.

Officers Rodriguez and Camarena decontaminated Plaintiff by running cool water over his head and facial area and exposing him to air. Camarena Dec. at ¶ 7; Rodriguez Dec. at ¶ 19. They then placed Plaintiff in holding cell 5 at the Health Services Annex. Camarena Dec. at ¶ 8; Rodriguez Dec. at 20. At around 9:45 a.m., Plaintiff was examined by Licensed Vocational Nurse ("LVN") H. Sanchez. Stevenson Dec., Ex. 1 (Medical Report of Injury Form 7219) at 18; and (Holding Cell Log) at 21; Nilsson Dec. at ¶ 19. On Form 7219, LVN Sanchez indicated that Plaintiff had been decontaminated, had been given instructions on self-decontamination and had also refused decontamination. Stevenson Dec., Ex. 1, Medical Report 7219. Nurse Sanchez noted "no injuries other than sprayed area," and that Plaintiff was released to custody at 10:00 a.m. *Id.* The Holding Cell Log indicates that Plaintiff was brought to the holding cell at 9:45 a.m., was seen by medical staff at 9:45 and was released at 1:15 p.m. Stevenson Dec., Ex. 1 at 21.

After Plaintiff and inmate Shotwell were removed from their cell, Sgt. Nilsson ordered Officer Sheets to search the cell for possible contraband. Nilsson Dec. at ¶ 15; Sheets Dec. at ¶ 3 . Officer Sheets found a small quantity of a chunky yellowish-brown powder wrapped in plastic laying on the lower shelf next to several pieces of Plaintiff's mail. Sheets Dec. at ¶ 4. Officer Sheets took photographs of the powdery substance and secured it as evidence. *Id.* at ¶¶ 7-9; Nilsson Dec. at ¶ 17. The powdery substance tested positive for cocaine. FAC at 133, 135, 141 (Rules Violation Reports).

4

After Plaintiff was released from the holding cell, he was placed in Administrative Segregation ("Ad Seg"). Ponder Dec. at ¶ 8. A Rules Violation Report ("RVR") was issued to Plaintiff for violations of prison regulations and a hearing was set to determine if Plaintiff was guilty or innocent of the charges. *Id.* at ¶ 7. Capt. Ponder found that Plaintiff presented an immediate threat to the safety of himself and others and a danger to institutional security and ordered that he remain in Ad Seg until the RVR hearing took place. *Id.* at ¶ 10. After the hearing on the RVR, Plaintiff was found guilty of possession of controlled substances, that is, the pruno and the powdery substance which tested positive for cocaine. FAC at 133, 135, 141.

## II.     PLAINTIFF'S VERSION OF EVENTS

Plaintiff's version of events is taken from his verified FAC and the declaration he submits in support of his opposition:

On the morning of June 11, 2006, at 8:30 a.m., Plaintiff was sitting on his bed in his cell, "with a bag of prison made wine in his hand," when Officer J. Rodriguez opened the food slot to Plaintiff's cell and Officer Woolf sprayed in pepper spray. FAC at 25, 37.[3] This caused Plaintiff to drop the bag of wine, which spilled on the floor. *Id.* Other than the pruno, no other contraband substances were in Plaintiff's cell. Opp. at 68.

Plaintiff makes several statements regarding his compliance with Officer Woolf's order to "cuff up." Because these statements are contradictory, they are discussed below.

Officers Rodriguez and Camarena did not decontaminate Plaintiff before placing him in the holding cell. Struggs Dec. at 3. From the instant Plaintiff was pepper sprayed, he was blinded, could not breathe and felt excruciating burning. *Id.* Officers Rodriguez and Camarena escorted Plaintiff to C-Hobby holding cell, not to the Health Services Annex. FAC at 25. Plaintiff stayed in the small, hot holding cell for over five hours without being decontaminated and the burning effects of the pepper spray were exacerbated by the heat in the small cell. *Id.* At some time before 2:15 p.m., Officers Rodriguez and Camarena escorted Plaintiff to

---

[3] Page numbers of Plaintiff's documents refer to the page numbers in the Court's electronic docketing system.

5

"medical." *Id.* at 108. At some point before 2:15 p.m., Plaintiff was seen and treated by LVN Sanchez. *Id.* at 117, 119. At 2:15 p.m., Officers Camarena and Rodriguez escorted Plaintiff to Ad Seg D block. *Id.* at 25.

Plaintiff states that the June 11, 2006 pepper spray incident and the order to house him in Ad Seg afterward were acts of retaliation against him by Sgt. Nilsson and Capt. Ponder due to a previous administrative grievance regarding inmate Shotwell's mail. Struggs Dec. at 13.

On August 29, 2006, the SVSP unit classification committee ("UCC") released Plaintiff into the general population because the RVR was "non-SHUable" and Plaintiff's record showed that he did not have a pervasive pattern of violence, predatory behavior or other safety concerns. Struggs Dec. at 19-20, UCC Report.

## ANALYSIS

I. **SUMMARY JUDGMENT STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

The non-moving party may not create an issue of fact by contradicting his own deposition testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991);

6

*Burgess v. United States*, 1997 WL 227815, at *3 n.1 (N.D. Cal. April 29, 1997). However, when "a contradictory affidavit is introduced to explain portions of earlier deposition testimony . . . the district court must make a factual determination that the contradiction was actually a 'sham.' A 'sham' affidavit is one conjured merely to avoid summary judgment." *Guy v. California Dep't of Corrections*, 2007 WL 4287790, at *2 (E.D. Cal. Dec. 6, 2007).

## II. PLAINTIFF'S CLAIMS

### A. Excessive Force Claim

#### 1. Legal Standard

In order to state a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must allege facts that, if proven, would establish that prison officials applied force "maliciously and sadistically" for the very purpose to cause harm, rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The extent of injury suffered by an inmate is one of the factors to be considered in determining whether the use of force is wanton and unnecessary. *Id.* Not every malevolent touch by a prison guard gives rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id.* at 9-10. Guards may use force only in proportion to the need for it in each situation. *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979).

In determining whether the use of force was for the purpose of maintaining or restoring discipline or, rather, for the malicious and sadistic purpose of causing harm, a court may evaluate the need for the application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. However, courts must accord prison administrators wide-ranging deference in the adoption and execution of policies and practices to further institutional order and security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jeffers v. Gomez*, 267 F.3d 895, 917

7

(9th Cir. 2001).

### 2. Officer Woolf

As discussed above, the parties' versions of events that occurred immediately after Officer Woolf arrived at Plaintiff's cell are disputed. The question is, viewing the evidence in the light most favorable to Plaintiff, whether he has submitted sufficient evidence to raise a genuine issue of material fact that Officer Woolf applied force "maliciously and sadistically to cause harm," rather than in a good-faith effort to maintain or restore discipline.

According to Defendants, before Officer Woolf released pepper spray into Plaintiff's cell, he ordered Plaintiff and inmate Shotwell to "cuff up," they refused and, instead, they appeared to be going to the toilet to flush down pruno and a substance that appeared to look like contraband. Only then did Officer Woolf dispense a can of pepper spray at both inmates. Officer Woolf dispensed a second can of pepper spray at inmate Shotwell when he continued to try to flush what looked like contraband down the toilet. And, Officer Woolf dispensed a third can of pepper spray at both inmates when they continued moving in their cell and failed to come to the food port to "cuff up." The entire incident lasted approximately one minute.

In his filings with the Court, Plaintiff makes several statements about what occurred when Officer Woolf arrived at Plaintiff's cell on June 11, 2006. In his declaration, Plaintiff states that he complied with Officer Woolf's order to "cuff up" so there was no need to dispense the pepper spray. Struggs Dec. at 2. However, in his FAC, Plaintiff states that, when Officer Rodriguez and Officer Woolf came to his cell, Officer Rodriguez opened the food port and Officer Woolf immediately dispensed the pepper spray without ordering Plaintiff to "cuff up." FAC at 25, 27. Also, in his FAC, Plaintiff states that one can of pepper spray would have been sufficient for Plaintiff and inmate Shotwell to have complied with Officer Woolf's order to "cuff up." *Id.* at 9. Thus, Plaintiff's own statements present different versions of whether Officer Woolf ordered Plaintiff and inmate Shotwell to "cuff up" before he released the pepper spray. Plaintiff also presents contradictory versions of when he complied with the order, assuming it was given.

8

There is no evidence that, in his declaration, Plaintiff was explaining portions of earlier testimony. Therefore, the Court discounts Plaintiff's contradictory statement in his declaration that there was no need for pepper spray because he complied with Officer Woolf's order to "cuff up." *See Kennedy*, 952 F.2d at 266-67 (non-moving party may not create issue of fact by contradictory previous testimony). The Court takes as true Plaintiff's statement in his FAC that only one can of spray was necessary. This statement indicates that Officer Woolf gave orders to "cuff up" and that Plaintiff and inmate Shotwell did not comply immediately.

It is undisputed that Officer Woolf used only one can of pepper-spray against each cellmate and a third can against both of them. Thus, Officer Woolf used one and a half cans of pepper spray against Plaintiff. Because Plaintiff concedes that one can of pepper spray would have been reasonable, the issue is whether Officer Woolf's dispensing another half can of pepper spray at Plaintiff raises an issue of material fact that he acted maliciously and sadistically to cause Plaintiff harm. The Court concludes that it does not.

Plaintiff had pruno in his cell and, although the parties dispute why the pruno spilled on the floor, they agree that it did spill. Given that the entire incident was over very quickly, lasting only approximately one minute, and the spilled pruno inevitably caused confusion, even if Plaintiff was not attempting to flush the pruno down the toilet, that Officer Woolf dispersed one half a can of pepper spray at Plaintiff after the pruno spilled was proportional to the need for force. In other words, one half can of pepper spray is not sufficient to raise a disputed issue that Officer Woolf acted with malicious and sadistic intent to cause Plaintiff harm rather than to restore order.

Thus, even viewing the evidence in a light most favorable to Plaintiff, he has not raised a genuine issue of material fact on his excessive force claim against Officer Woolf.

**3. Sgt Nilsson, Lt. Stevenson and Officers Rodriguez, Camarena, Sheets and Reynoso**

Plaintiff also fails to raise a genuine issue of material fact on his excessive force claim against Sgt. Nilsson, Lt. Stevenson and Officers Rodriguez, Camarena, Sheets and Reynoso.

9

First, it is undisputed that Officer Woolf is the only officer that used pepper spray against Plaintiff and inmate Shotwell.  Second, because Officer Woolf's use of force was not excessive, the other Defendants named in this claim could not have acted with malicious and sadistic intent based on Officer Woolf's use of pepper spray.  Third, Plaintiff does not dispute that Sgt. Nilsson received a confidential note that there might be contraband in Plaintiff's cell.  Thus, Sgt. Nilsson had a legitimate penolgical reason to order the cell search.  Fourth, Plaintiff's claim that, except for the pruno, no contraband was found in his cell is not relevant to Sgt. Nilsson's state of mind at the time he ordered the cell search.

Fifth, Plaintiff's allegations are conclusory with no factual content.  For instance, in his FAC, Plaintiff alleges that Sgt. Nilsson was responsible for ordering "other Defendants" to use excessive force against Plaintiff by using pepper spray.  FAC at 7-9.  This is a conclusory allegation and not a statement of fact made from Plaintiff's personal knowledge.  Plaintiff also alleges that Sgt. Nilsson should have ordered Officer Woolf to stop dispensing pepper spray after he dispensed the first can.  However, because Officer Woolf's conduct was reasonable given the circumstances he confronted, there was no need for Sgt. Nilsson to order him to stop.

Plaintiff's allegations against Lt. Stevenson are that he conspired with Sgt. Nilsson in conducting Plaintiff's cell search, he did not use his authority to order Defendants to stop using excessive force, and he did not have his crisis team respond to the cell search incident.  None of these conclusory allegations are sufficient to overcome Lt. Stevenson's testimony that he did not participate in the cell search and only became aware that Sgt. Nilsson and other officers had conducted a search of Plaintiff's cell at 9:30 a.m., after the cell search was over.  Stevenson Dec. at ¶¶ 3-5.  Lt. Stevenson's name was on the Incident Report because he was the lieutenant on duty in C unit, where Plaintiff was housed and, thus, he was required to gather the officers' reports and to complete an Incident Report package by writing a summary of the incident.  Stevenson Dec. at ¶ 7-9.  Because Lt. Stevenson was not at Plaintiff's cell when the cell search took place, he could not have given any orders regarding the use of pepper spray or taken other malicious and sadistic action toward Plaintiff.

Plaintiff's allegation against Officer J. Rodriguez is that he opened the food slot and then Officer Woolf disbursed pepper spray through that slot. FAC at 25-26. Plaintiff's allegation against Officer R. Reynoso is that he stood by and watched Officer Woolf continuously use unnecessary pepper spray. FAC at 32-33. Plaintiff's allegation against Officer Camarena is that he failed to use "his authority to order other Defendants to stop their excessive force." FAC at 46-47. Plaintiff's allegations against Officer Sheets is that he conspired with other officers to find drugs in Plaintiff's cell and did not use his authority to stop other Defendants from using excessive force. Plaintiff's allegation against Officer O. Reynoso is that he did not give a full account of the cell incident. All of these allegations are conclusory and insufficient to raise a triable issue that any of these Officers acted with malicious and sadistic intent to harm Plaintiff. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (conclusory allegations unsupported by factual data are insufficient to defeat a motion for summary judgment).

For all the reasons stated above, Plaintiff's excessive force claim fails because he has not raised a disputed issue of material fact that any Defendant's conduct at the June 11, 2006 cell search was malicious and sadistic. Accordingly, Defendants' motion for summary judgment on the excessive force claim is granted.

### B. Deliberate Indifference to Serious Medical Needs Claim

Plaintiff claims that Lt. Stevenson, Sgt. Nilsson, and Officers Camarena, R. Reynoso, Rodriguez and Woolf were deliberately indifferent to his serious medical needs by placing him in a holding cell after he was pepper sprayed without immediate decontamination or medical attention. FAC at 8, 117. Defendants argue that they are entitled to judgment as a matter of law because the evidence does not raise a genuine issue of material fact that Defendants had the requisite culpable state of mind to meet the deliberate indifference standard.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively,

11

sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health. *See Farmer*, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id.* Deliberate indifference is a state of mind "more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Prison officials are deliberatley indifferent when they "deny, delay or intentionally interfere with medical treatment." *Id.* Only a prison official who knows both of "facts from which the inference could be drawn" that an excessive risk of harm exists and who actually draws that inference is deliberately indifferent to the inmate's health. *Farmer*, 511 U.S. at 837.

The evidence, when viewed in the light most favorable to Plaintiff, does not raise a genuine issue of material fact that any Defendant was deliberately indifferent to Plaintiff's medical need to be decontaminated from pepper spray.

It is undisputed that, immediately after Plaintiff exited his cell, Sgt. Nilsson ordered Officers Camarena and Rodriguez to escort Plaintiff to the Health Services Annex for decontamination and a medical examination. It is also undisputed that Sgt. Nilsson notified

medical staff that Plaintiff and inmate Shotwell were on their way and needed medical attention for the effects of pepper spray. The Medical Treatment Form 7219 indicates that LVN Sanchez saw Plaintiff sometime before 10:00 a.m., when he was released to custody and the Holding Cell Log indicates that LVN Sanchez saw Plaintiff at 9:45 a.m. When LVN Sanchez evaluated Plaintiff, she noted that he had injuries from pepper spray, that he was decontaminated and that he refused further decontamination.

Plaintiff states that Officers Camarena and Rodriguez took him to the C-Hobby holding cell, rather than a holding cell at the Health Services Annex. He also states that Officers Camarena and Rodriguez did not decontaminate him. For this motion, the evidence is taken in the light most favorable to Plaintiff; thus, the Court assumes that Officers Camarena and Rodriguez did not decontaminate Plaintiff before putting him in the holding cell. However, even if this is taken to be true, the following evidence shows that the Officers were not deliberately indifferent.

First, the Officers knew that Sgt. Nilsson informed medical staff that Plaintiff would have to be medically evaluated and treated for exposure to pepper spray. Second, the Officers left Plaintiff in a holding cell where, they correctly assumed, Plaintiff would be seen by someone from the medical staff. Third, once medical staff were alerted that Plaintiff needed medical attention and the Officers left Plaintiff in the holding cell, it was the responsibility of medical staff to determine when and how to treat Plaintiff. According to Sgt. Nilsson, medical staff were informed at 9:45 a.m. and, according to the Medical Form 7219, Plaintiff was seen by LVN Sanchez at 10:00 a.m. Thus, even if Officers Camarena and Rodriguez did not decontaminate Plaintiff when they placed him in the holding cell, they did so thinking that he would shortly be seen and evaluated by medical staff, who would decontaminate him. No evidence shows that Officers Camarena and Rodriguez denied, delayed or intentionally interfered with Plaintiff's medical treatment. *See Wood*, 900 F.2d at 1334 (deliberate indifference shown by evidence that prison official denied, delayed or intentionally interfered with medical treatment).

In an effort to raise a genuine dispute of material fact, Plaintiff argues that LVN Sanchez's

13

Form 7219 is incorrect because Registered Nurse Esquival signed Form 7219 where it indicates that a medical person was notified and the Holding Cell Log submitted by Defendants "incorrectly" indicates that Plaintiff was seen by LVN Sanchez at 9:45 a.m.

As conceded by Plaintiff, he was seen by LVN Sanchez; thus, the dispute is whether LVN Sanchez saw Plaintiff at 9:45 a.m., as indicated on the Form 7219, or at approximately 2:15 p.m., as asserted by Plaintiff. However, this dispute of fact is not material to deciding whether Officers Camarena and Rodriguez were deliberately indifferent to Plaintiff's needs. As stated above, after Officers Camarena and Rodriguez placed Plaintiff in the holding cell, knowing that medical staff had been alerted that Plaintiff was in need of medical attention, their responsibility for Plaintiff's medical care ended. They cannot be held liable for LVN Sanchez's failure to immediately respond to Plaintiff's medical needs.

Plaintiff also attempts to raise a dispute of fact regarding the length of time he was in the holding cell. Plaintiff states that the cell search occurred at 8:30 a.m., not at 9:08 a.m., as is indicated in all of the documents submitted regarding this incident and all of Defendants declarations. He also states that he was released from the holding cell at 2:35 p.m., rather than 1:15 p.m., as indicated on the Holding Cell Log. Based on this, Plaintiff argues that he was in the holding cell without medical treatment for a much longer period of time than Defendants' evidence indicates. However, as discussed above, once Officers Camarena and Rodriguez left Plaintiff in the holding cell, they were not responsible for when he was examined by medical staff. Therefore, even taking Plaintiff's timing of the events to be true, Officers Camarena and Rodriguez were not deliberately indifferent to Plaintiff's serious medical need.

Furthermore, Plaintiff fails to show that any other Defendant named in this claim was deliberately indifferent to his need for treatment from pepper spray. The evidence shows that Sgt. Nilsson took two actions relevant to Plaintiff: (1) he ordered Officers Camarena and Rodriguez to take Plaintiff to the Medical Annex, to decontaminate him and to leave him there to await further medical attention, and (2) he notified medical staff that Plaintiff and inmate Shotwell were on their way to the Medical Annex and were in need of medical attention for the

14

effects of pepper spray. Neither of these actions were adverse to Plaintiff's interests. Therefore, Plaintiff does not show deliberate indifference by Sgt. Nilsson.

The evidence shows that Lt. Stevenson only learned of the pepper spray incident after it occurred and that Officers Reynoso and Woolf had no responsibility for Plaintiff because they were ordered to escort inmate Shotwell to the Medical Annex and decontaminate him.

Thus, Plaintiff has failed to raise a disputed issue of material fact that any Defendant was deliberately indifferent to his serious medical need. Summary judgment on this claim is granted in favor of Defendants.

### C. Retaliation Claims Against Sgt. Nilsson and Capt. Ponder

Plaintiff claims that Sgt. Nilsson ordered the cell search and the use of excessive force and that Capt. Ponder placed Plaintiff in Ad Seg following the cell search in retaliation for previous grievances filed against them.

#### 1. Legal Standard

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997). Protected conduct includes the use of a prison's administrative grievance procedures, and therefore a prisoner may not be retaliated against for using such procedures. *See Rhodes*, 408 F.3d at 567. Retaliatory motive may be shown by the timing of the allegedly-retaliatory act and inconsistency with previous actions, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). However, a retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, the plaintiff

15

must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this").

**2. Sgt. Nilsson**

Plaintiff argues that evidence of his previous administrative grievance against Sgt. Nilsson is sufficient to show that Sgt. Nilsson was retaliating against Plaintiff by ordering Plaintiff's cell to be searched with excessive force. However, Plaintiff's evidence is insufficient to make such a showing.

Plaintiff's evidence is an administrative grievance filed by inmate Shotwell against mail room officers regarding inmate Shotwell's mail--one outgoing letter was returned to him, unsent, many days after he had placed it in the prison outgoing mail, and two incoming envelopes of legal mail had been delivered to him already opened. Struggs Dec., Ex. 6B. At the First Level of Review, dated October 7, 2005, Sgt. Nilsson investigated and concluded, "Although it was an inconvenience to you that your letter was postponed in being processed out of the institution, your own statement that nothing was missing from the envelop does not warrant punitive or monetary damages. I have also inspected the two envelopes you claimed to be Legal mail. I did not see any markings on them that would have alerted the mail room that they contained legal materials." Struggs Dec. at 33-34. The First Level Appeal, signed by Sgt. Nilsson and Capt. Ponder, was partially granted due to the fact that an investigation was conducted. *Id.*

Regarding this retaliation claim, Plaintiff argues the following:

> [T]his conduct by Defendants begun when Plaintiff and his brother were dissatisfied that Defendant M. Nilsson and Defendant G. Ponder refuse [sic] to do and complete a full investigation as to why brothers mail outgoing mail just sit [sic] around in the C7 control for 46 days without being processed. After months after months arguing this Plaintiff and Defendant did not come to resolving this matter on no level. All of a sudden June 11, 2006 a raid on Plaintiff and his brother cell [sic]. . . .

Opp. at 13, 17

This claim fails for many reasons. First, Plaintiff does not explain how a grievance filed by inmate Shotwell would motivate Sgt. Nilsson to retaliate against Plaintiff. Second, inmate

16

Shotwell's grievance was against officers in charge of the mailroom, not against Sgt. Nilsson. Third, Plaintiff fails to show a nexus between this grievance and Sgt. Nilsson's alleged retaliation.

No facts show inmate Shotwell's previous grievance was a substantial factor motivating Sgt. Nilsson to order that Plaintiff's and inmate Shotwell's cell be searched for contraband. On the contrary, the evidence shows that Sgt. Nilsson received a confiscated note early on June 11, 2006 that led him to believe that controlled substances were in Plaintiff's and inmate Shotwell's cell. Sgt. Nilsson ordered a search of the cell based on this belief. Plaintiff does not dispute that Sgt. Nilsson received such a note. Thus, Sgt. Nilsson's order to search the cell reasonably advanced the legitimate correctional goal of investigating possible criminal activity within the prison. As a result of the cell search, Plaintiff's pruno was confiscated. Although Plaintiff disputes that cocaine was found in his cell, this is not relevant to Sgt. Nilsson's motivation for ordering the search.

Also, as discussed above, no evidence shows that Officer Woolf acted deliberately or maliciously toward Plaintiff when he released the pepper spray into Plaintiff's cell; therefore, Sgt. Nilsson cannot be held liable for any constitutional violation stemming from Officer Woolf's conduct in the cell search.

In summary, Plaintiff has not raised a genuine issue of material fact that Sgt. Nilsson ordered the cell search in retaliation against Plaintiff for inmate Shotwell's mail grievance. Summary judgment on this claim is granted to Sgt. Nilsson.

### 3. Capt. Ponder

Plaintiff claims that, by ordering that Plaintiff be housed in Ad Seg after the June 11, 2006 incident, Capt. Ponder was retaliating against Plaintiff for inmate Shotwell's mail grievance.

This claim fails for the same reasons discussed regarding the retaliation claim against Sgt. Nilsson: (1) Plaintiff does not explain how inmate Shotwell's grievance motivated Capt. Ponder to retaliate against Plaintiff; (2) the grievance is not against Capt. Ponder; he just signed it at the First Level of Review; and (3) Plaintiff fails to show a nexus between inmate Shotwell's grievance and Capt. Ponder's alleged retaliation against Plaintiff.

Furthermore, the evidence shows that Capt. Ponder's decision to place Plaintiff in Ad Seg advanced a legitimate correctional goal. Capt. Ponder explains that, because Plaintiff had violated California prison regulations by resisting lawful orders and by possessing pruno and possibly other illegal drugs, a RVR was issued and a hearing date was set to determine whether Plaintiff was guilty or innocent of the charges. Ponder Dec. at ¶ 7. Capt. Ponder determined that, because Plaintiff possessed alcohol and possibly other illegal drugs, he presented an immediate risk to his safety and the safety of other inmates and an immediate threat to the security of the institution. Because of this determination, after the June 11, 2006 incident, Capt. Ponder ordered Plaintiff to Ad Seg housing. *Id.* at ¶¶ 8-10. In doing so, Capt. Ponder states that he was following California Code of Regulations (CCR), Title 15, Section 3335. *Id.* at ¶ 9.

Section 3335 states, in relevant part,

> when an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately removed from general population and be placed in administrative segregation.

CCR tit 15, § 3335(a).

Plaintiff argues that Capt. Ponder could not have been following section 3335 because Plaintiff was not an immediate threat to the safety of other inmates or to himself, he was not a danger to the prison's security and he was not jeopardizing the integrity of any investigation. He submits the August 2006 UCC report, which found that the charges stemming from the June 11, 2006 incident were not the type that warrant segregated housing and that Plaintiff did not pose any danger to himself, others or the institution. Thus, the UCC placed Plaintiff back into the general population. Struggs Dec. at 19-20.

The fact that, in retrospect, the UCC committee found that Plaintiff's charges did not warrant segregated housing and that he was not a danger to himself or to others, does not mean that, at the time Capt. Ponder made his decision, it was not in accordance with CCR § 3335(a). More importantly, Plaintiff's retaliation claim fails because Plaintiff has provided no facts showing that inmate Shotwell's grievance was a substantial motivating factor for Capt. Shotwell's

18

decision to place Plaintiff temporarily in Ad Seg following the June 11, 2006 cell search.

In summary, Plaintiff has not raised a genuine issue of material fact showing that Capt. Ponder ordered Plaintiff to be temporarily housed in Ad Seg in retaliation for inmate Shotwell's mail grievance. Summary judgment on this claim is granted to Capt. Ponder.

### III. QUALIFIED IMMUNITY

Defendants argue that summary judgment is also proper in this case because they are entitled to qualified immunity from liability for civil damages. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as had been required by *Saucier*, and holding that a court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that her or his conduct was unlawful in the situation she or he confronted. *Saucier*, 533 U.S. at 201-202.

The Court has found that, viewing the evidence in a light most favorable to Plaintiff, no Defendant violated Plaintiff's constitutional rights. Again, taking Plaintiff's evidence as true for purposes of this motion, it would not be clear to a reasonable officer that it would be unlawful to: (1) order a search of Plaintiff's cell after receiving a note that there might be contraband in the cell; (2) disburse a half can of pepper spray at Plaintiff when Plaintiff did not immediately follow orders to "cuff up" and Plaintiff's pruno spilled on the ground; (3) place Plaintiff in a holding cell

to be seen by medical personnel after medical personnel had been notified that Plaintiff was in need of medical treatment and evaluation from the effects of pepper spray; or (4) order that Plaintiff temporarily be placed in Ad Seg after the cell search where pruno, and possibly other illegal drugs, was found in Plaintiff's possession. Therefore, Defendants are also entitled to summary judgment on the basis of qualified immunity.

In light of the fact that summary judgment is granted in favor of Defendants, Plaintiff's motion for appointment of counsel and return of property is denied as moot.

## CONCLUSION

Based on the foregoing, the Court orders as follows:

1. Defendants' motion for summary judgment is GRANTED. (Docket No. 81.)

2. Plaintiff's motion for appointment of counsel and return of property is DENIED. (Docket No. 66.)

3. The claims against Officer Basso and Lt. Moore arising from Plaintiff's disciplinary hearing are dismissed with prejudice.

4. This Order terminates Docket Nos. 66 and 81.

5. The Clerk of the Court shall enter a separate judgment and terminate this case.

**IT IS SO ORDERED.**

Dated: March 5, 2014

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE